**TRAVELERS INSURANCE COMPANY, Plaintiff,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**C.A. No. 20418.**

Court of Chancery of Delaware, New Castle County.

Submitted: Oct. 13, 2005.

Decided: Oct. 25, 2005.

George T. Lees, III, Esquire, Bifferato, Gentilotti, Biden & Balick, Wilmington, Delaware, Attorney for the Plaintiff.

Allan Wendelburg, Esquire, Nationwide Insurance Trial Division, Wilmington, Delaware, Attorney for the Defendant.

## OPINION AND ORDER

LAMB, Vice Chancellor.

The plaintiff in this case, Travelers Insurance Company, seeks enforcement of an arbitration award made in its favor against the defendant, Nationwide Mutual Insurance Company. Nationwide's pending motion for summary judgment asks the court to deny enforcement of the arbitration panel's decision, arguing that the panel erred in granting relief to Travelers.

In general, this court refuses to reconsider the decision of an arbitration panel. The strong public policy support for the resolution of disputes through arbitration requires that courts uphold the decisions reached by such panels, unless the party seeking to vacate presents evidence satisfying a few narrow statutory excep-

tions.[1] This case, however, presents extraordinary facts which render upholding the arbitration panel's decision contrary to the same public policy which animates the courts' deference toward arbitration. Simply put, the panel's decision was plainly wrong, and in opposition to clear statutory mandate. Therefore, for the reasons stated below, the court vacates the arbitration panel's award pursuant to 10 *Del. C.* § 5714. Any other result would be a gross injustice.

## I.

This case arises out of an automobile accident on May 23, 1999, caused by Nationwide's insured. As a result of that incident, Travelers paid $6,219.59 in PIP/No Fault benefits to its insured, Shelly Evans, who was the operator of the other vehicle involved in the accident. Travelers then sought to recover that sum from Nationwide under the principles of subrogation. Because both companies are signatories to an inter-company arbitration agreement, and have entered into Arbitration Forums, Inc.'s Automobile Subrogation Arbitration Agreement, Travelers's claims were submitted to arbitration. The arbitration was scheduled for July 11, 2002. In the meantime, on December 18, 2001, Evans settled her claims against Nationwide on receipt of a payment of $50,000, which was the limit of Nationwide's liability under its policy.[2] On June 17, 2002, Nationwide's claim representative, Scott Smith, wrote a letter notifying both Travelers and Arbitration Forums of the settlement with Evans, advising that Nationwide had tendered its policy limits in payment of the underlying tort claim.[3]

1. *Yuen v. Gemstar–TV Guide Int'l, Inc.*, 2004 WL 1517133, *2, 2004 Del. Ch. LEXIS 96, *6 (Del. Ch. June 30, 2004); *Wier v. Manerchia,* 1997 WL 74651, *1, 1997 Del. Ch. LEXIS 17, *3 (Del. Ch. Jan. 28, 1997).

2. Def.'s Ex. A.

3. Pl.'s Ex. D at Ex. 6; Abbatematteo Dep. 11–12.

For reasons that are difficult to understand, Travelers continued with the arbitration proceeding, even though undisputed deposition testimony establishes that Travelers received Smith's letter before the hearing date of July 11, 2002.[4] Despite knowing that Nationwide had already paid its policy limits, the arbitration panel awarded Travelers $6,219.59 in satisfaction of its subrogation claim.[5] Nationwide did not pay the award, and on August 26, 2002, Travelers warned Nationwide by letter that it would pursue litigation if payment was not received.[6] Nationwide did not respond to Travelers's request for payment. Finally, Travelers filed this suit seeking enforcement of Arbitration Forums's award.

## II.

As a general rule, a decision reached by an arbitration panel is not reviewed on the merits by Delaware courts. The grounds for vacating an arbitration award, where they exist, are narrowly circumscribed. Indeed, the relevant statute recognizes only five grounds for vacating an arbitration award, none of which are strictly applicable in this case.[7]

In addition, Delaware courts have vacated arbitration awards when the arbitrators have exhibited what the courts have called "manifest disregard" of the law. Though this ground for vacatur does exist, as an outgrowth of the statutory vacatur grounds for cases in which the arbitrator exceeds his powers,[8] the scope of the court's review in such cases is extremely limited. As this court has previously explained, an arbitrator's decision can only be overturned if the arbitrator acted " 'in manifest disregard' of the law, [or was] cognizant of the controlling law but clearly chose to ignore it in reaching [its] decision." [9]

Examples of this extraordinary remedy are necessarily rare in Delaware jurisprudence. The only case on point that the court has been able to discover, *Beebe Medical Center v. Insight Health Services Corp.*, applied the manifest disregard test where the arbitration panel ignored its own internal directives by failing to consider the question of whether the panel was

---

4. Abbatematteo Dep. 12.

5. Pl.'s Ex. D at Ex. 9.

6. Pl.'s Ex. D at Ex. 7.

7. The five statutory grounds in 10 *Del. C.* § 5714(a) are as follows: (1) fraud, corruption, or undue means; (2) the evident impartiality of an arbitrator appointed as a neutral; (3) the arbitrator exceeded its powers, or so imperfectly executed its powers that a final and definite award upon the subject matter submitted was not made; (4) the arbitrator refused to postpone the hearing upon sufficient cause being shown therefor, or refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 5706, or failed to follow the procedures set forth in this chapter, so as to prejudice substantially the rights of a party; (5) there was no valid arbitration agreement, or the agreement to arbitrate had

not been complied with, or the arbitrated claim was barred by limitation under § 5702(c), and the issue was not adversely determined in proceedings under § 5703 and the party applying to vacate the award did not participate in the arbitration hearing without raising the objection.

8. 10 *Del. C.* § 5714(a)(3); *see also Falcon Steel Co. v. HCB Contractors, Inc.*, 1991 WL 50139, *2, 1991 Del.Ch. LEXIS 69, *5–6 (Del. Ch. Apr. 4, 1991).

9. *Wier*, 1997 WL 74651 at *4, 1997 Del.Ch. LEXIS at *14; *Falcon Steel Co.*, 1991 WL 50139 at *2, 1991 Del.Ch. LEXIS at *5–6; *Custom Decorative Moldings, Inc. v. Innovative Plastics Technology, Inc.*, 2000 WL 1273301, *5, 2000 Del.Ch. LEXIS 131, *15 (Del.Ch. Aug. 30, 2000).

evidently biased against one of the parties before it.[10]

Because 10 *Del. C.* § 5714(a)(3) is modeled after the Federal Arbitration Act, however, "federal cases interpreting this section are most helpful." [11] Examining federal jurisprudence is particularly helpful in this case as incidences of vacatur for manifest disregard in federal court, though still rare,[12] are far more plentiful than in Delaware. Among the manifest errors identified by federal courts are circumstances in which the panel's judgment was found to be incompatible with a controlling statute. In *Gas Aggregation Services Inc. v. Howard Avista Energy LLC,* for example, a federal circuit court upheld a district court's decision to vacate an arbitration award where the arbitration panel had granted attorneys' fees in favor of the victorious party. As was clear from the evidence presented there, both parties were "sophisticated gas traders," but the relevant statute plainly stated that awards of attorneys' fees should only be made in cases of consumer transactions.[13] In another case, the Second Circuit vacated an arbitration panel's decision where, in manifest disregard of the law, the panel granted punitive damages despite controlling New York precedent that forbade the award of such damages in arbitration.[14]

■■■ The federal cases are also important in understanding what it means for the arbitrator's disregard to be "manifest." Though the standard requires intentionality, a finding of "manifest disregard" does not require the arbitration panel to expressly state that it is ignoring the law.[15] Rather, a court may infer the required knowledge of the law and intentionality on the part of the arbitrator if the court finds "an error that is so obvious that it would instantly be perceived as such by the average person qualified to serve as an arbitrator." [16] Were the rule otherwise, arbitrators would have a positive incentive to refuse to explain their decisions, and the last resort review provided by the possibility of vacatur for manifest disregard, with its origins in a decision of the Supreme Court of the United States,[17] would be eviscerated. This result is inconsistent with the policy interests of the state, which rely on limited judicial review of arbitration decisions to ensure that arbitrated disputes are resolved fairly.

10. 751 A.2d 426 (Del.Ch.1999).

11. *Falcon Steel Co.,* 1991 WL 50139, *3, 1991 Del.Ch. LEXIS 69, *7.

12. *Duferco International Steel Trading v. T. Klaveness Shipping,* 333 F.3d 383, 389 (2d Cir.2003) ("Our review ... is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare. [S]ince 1960 we have vacated some part or all of an arbitral award for manifest disregard in ... four out of at least 48 cases where we applied the standard.").

13. *Gas Aggregation Services, Inc. v. Howard Avista Energy LLC,* 319 F.3d 1060, 1069 (8th Cir.2003); *c.f. Koruga v. Fiserv Correspondent Services, Inc.,* 183 F.Supp.2d 1245, 1247–48

(D.Or.2001) (upholding an arbitration award where the arbitration panel disregarded a federal circuit court ruling largely on point that was from another jurisdiction, interpreted a substantially different act, and was premised on the particular facts in that case).

14. *Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512 (2d Cir.1991).

15. *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 204 (2d Cir.1998).

16. *Duferco,* 333 F.3d at 390.

17. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 485, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

## III.

The facts in this case fall squarely within the standards for manifest disregard and error explained above. Delaware law, 21 *Del. C.* § 2118(g)(1), provides that "subrogated rights shall be limited to the maximum amount of the tortfeasor's liability insurance coverage available for the injured party."

If the amount of any settlement exceeds the maximum amount of the tortfeasor's liability insurance, then "any insurer who has been paid its subrogated claim shall reimburse the tortfeasor's liability insurer that portion of the claim exceeding the maximum amount of the tortfeasor's liability insurance coverage available for the injured party."[18] Both parties accept that Nationwide has paid the maximum amount of the tortfeasor's liability insurance, which in this case is $50,000. Moreover, Travelers concedes that, under this statutory scheme, it had no right to recover on its subrogation claim in the arbitration.

The court can infer that the arbitration forum, convened to consider issues of subrogation, knew of the law that governs the field. Indeed, the rules provided by Arbitration Forums itself acknowledge that "the monetary limits and extent of a signatory's claim shall be governed by the statute creating the subrogation or direct action rights."[19] The panel also knew of Nationwide's settlement with Evans, for the uncontradicted evidence is that notice of Nationwide's payment was sent to the arbitration panel before the panel made its decision.[20] In these circumstances, it would be entirely inequitable to allow Travelers to recover money that it concedes it would not be entitled to if the arbitration panel had properly applied the clear law. Indeed, even if this court were to uphold the arbitration panel's award, Travelers would be required to reimburse Nationwide for the entire sum in dispute.

Moreover, Travelers's contention that Nationwide was bound to raise its objections as an affirmative defense during the arbitration is unavailing. The fact that a statute forbids the excess award could certainly have been raised before the panel, but Nationwide's failure to do so does not excuse the fact that the final judgment was made in manifest disregard of the law on a record that reflected the operative facts.

The court is aware of the extraordinary nature of the relief that it affords in this opinion. Parties disappointed by arbitration would be mistaken to believe that the court means to authorize a wide ranging review of arbitration decisions in the future. In almost all cases of vacatur, courts have acted on the basis of extreme facts. *Montes v. Shearson Lehman Brothers*[21] is a representative example. In that case, rather than basing its decision on a mere legal error,[22] the court overturned a substantively dubious arbitration award when there was evidence on the record that the arbitrators were explicitly urged to disregard the law.[23] The facts in this case are of an equivalent character. Somehow, the arbitration panel granted the disputed award to Travelers even though Nationwide, having paid out its policy limits, had no possible additional

---

**18.** 21 *Del. C.* § 2118.

**19.** Def.'s Ex. C at 1.

**20.** Pl.'s Ex. D at Ex. 6.

**21.** 128 F.3d 1456 (11th Cir.1997).

**22.** As numerous courts have noted, "manifest disregard" is "more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *See, e.g., Duferco,* 333 F.3d at 389.

**23.** *Montes,* 128 F.3d at 1462.

liability to Travelers. In vacating Arbitration Forums's award, therefore, the court applies the "manifest disregard" standard in one of the rare circumstances for which the common law has provided it: in a case where the arbitration panel's decision is so gravely erroneous under a clear statutory mandate as to preclude enforcement.

### IV.

For the above reasons, the plaintiff's motion for summary judgment is DENIED, and the defendant's cross-claim for summary judgment is GRANTED.

IT IS SO ORDERED.