IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BON AYRE LAND LLC, | § | |
| | § | |
| Appellant Below-Appellant, | § | No. 221, 2015 |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| BON AYRE COMMUNITY | § | |
| ASSOCIATION, | § | C.A. No. K14A-08-001 |
| | § | |
| Appellee Below-Appellee. | § | |

Submitted: February 24, 2016
Decided: February 25, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, Justices; and **GLASSCOCK**, Vice Chancellor,[*] constituting the Court *en banc*.

### **O R D E R**

This 25th day of February 2016, having considered this matter on the briefs filed by the parties and after oral argument, we find it evident that:

(1) This appeal is centered on a disagreement about a rent increase between Bon Ayre Land LLC (the "Landlord"), the owner of a manufactured homes community, and Bon Ayre Community Association (the "Homeowners' Association"), which represents the interests of the individual homeowners who lease land from the Landlord. The parties dispute various issues regarding the propriety of an arbitrator's resolution of their dispute under a new statute that

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

limits the ability of property owners leasing land to owners of manufacture homes to increase rent above the applicable consumer price index.[1] This appeal comes to us from the Superior Court, which reversed the decision of the arbitrator and denied the Landlord the right to implement any rent increase by relying on one ground. That ground involved the Superior Court's *de novo* determination that when the Landlord convened the meetings with the homeowners required under 25 *Del. C.* § 7043(b), the Landlord failed to "in good faith, disclose all of the material factors resulting in the decision to increase the rent"[2] because it did not present a market rent study that it attempted to introduce at the later arbitration, or any other verifiable documentation.[3] The market rent study provided a detailed perspective on rents at allegedly comparable properties in support of the Landlord's position that the proposed rent increase was justified by "market rent," which is one of the potential grounds for a rent increase under the statute.[4] The Superior Court held that "[b]ecause [the Landlord] has failed to comply with the procedural

---

[1] 25 *Del. C.* §§ 7040 et seq. (prior versions).
[2] *Id.* § 7043(b) (prior version).
[3] *Bon Ayre Land LLC v. Bon Ayre Cmty. Ass'n*, 2015 WL 893256, at *8 (Del. Super. Feb. 26, 2015).
[4] "One or more of the following factors may justify the increase of rent in an amount greater than the [Consumer Price Index For All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U")] . . . (7) Market rent.--For purposes of this section, "market rent" means that rent which would result from market forces absent an unequal bargaining position between the community owner and the homeowners. In determining market rent, relevant considerations include rents charged by comparable manufactured home communities in the applicant's competitive area. To be comparable, a manufactured home community must offer similar facilities, services, amenities and management." 25 *Del. C.* § 7042 (prior version).

2

requirements of 25 *Del. C.* § 7043(b), any rental increase above the [applicable consumer price index] is denied."[5]

(2)    In reaching the issue of whether the Landlord had met its obligation under 25 *Del. C.* § 7043(b) to disclose all material factors resulting in its proposal to raise the rent, the Superior Court necessarily made a *de novo* determination because the arbitrator held that the Homeowners' Association had waived that issue in the course of the proceedings, not only by virtue of a formal stipulation stating that "[a] meeting between the parties was held pursuant to 25 *Del. C.* § 7043(b)"[6] but, more importantly, by its conduct both on the way to and during the arbitration. During that time period, the Homeowners' Association appears to have agreed that the parties would focus solely on the issue of whether the proposed rent increase was justified on the basis of comparable market rent and that the Landlord would win if it could demonstrate that the rent increase was justified on that basis.[7] Only after two of the Landlord's witnesses had testified at

---

[5] *Bon Ayre Land LLC*, 2015 WL 893256, at *9.

[6] App. to Answering Br. at 24 (Stipulated Facts).

[7] According to the arbitrator, during a May 7, 2014 teleconference between the parties, the Homeowners' Association's attorney initially said that he planned to challenge the validity of the meetings for failure to comply with the statutory requirements, but then agreed that the Landlord would win if it could prove that the proposed rent increase was justified by comparable market rent. Over the next three weeks, the parties and the arbitrator exchanged letters and emails, but there was no mention of challenging the validity of the meetings. Then, at the hearing, the arbitrator asked: "Do the parties agree a meeting was held in accordance and pursuant to Title 25, Delaware Code 7043(b)?" To which the Homeowners' Association's attorney replied: "Yes. There were two meetings." *Id.* at 26 (Transcript of Arbitration at 16, *Bon Ayre Cmty. Ass'n v. Bon Ayre Homes*, Nos. 2-2014 & 3-2014(May 28, 2014)). Further, the Homeowners' Association's attorney gave no opening statement and did not raise the issue of the Landlord's

3

the hearing and one of them had been excused, the arbitrator found, did the Homeowners' Association then revive its contention that the Landlord failed to comply with the statute's procedural requirements. The arbitrator found that was unfair and held that the Homeowners' Association had waived its right to make that contention.

(3)     On appeal, the Superior Court focused very narrowly on the formal stipulation and gave little weight to the arbitrator's impression of the issues that were to be heard and the arbitrator's understanding of the Homeowners' Association's position in the course of shaping the issues for hearing.

(4)     Were this a typical administrative law appeal, we would likely reverse the Superior Court's decision because it had substituted its own judgment in a situation when the body entrusted with the initial responsibility to hear a dispute had exercised its discretion reasonably. Given the arbitrator's close familiarity with the record and given the record's support for his impression that the Homeowners' Association had waived any challenge under 25 *Del. C.* § 7043(b), we would be loathe to find that the arbitrator had engaged in any abuse of discretion.

---

failure to comply with the requirements of 25 *Del. C.* § 7043(b) until four hours into the arbitration proceedings, after two of the Landlord's witnesses testified without being asked about the meetings, and one of those witnesses was dismissed.

(5)    But, the statute under which the Superior Court was operating was confusing at best, and incoherent at worst.  For starters, the statute expressly deemed the proceeding before the arbitrator to be "nonbinding."[8]  But, it then went on to say that the arbitrator's ruling will be reviewed by the Superior Court and that the appeal will be "on the record without a trial *de novo*."[9]  We are at a loss to determine what standard of review the Superior Court was supposed to apply based on that language.  Although the statute calls for a decision by an arbitrator, it does not indicate that the Superior Court should use the traditionally very narrow scope of review available for arbitrators' decisions.[10]  And by suggesting that the

---

[8] 25 *Del. C.* § 7043(c) (prior version).

[9] *Id.* § 7044 (prior version).

[10] *See, e.g.*, *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) ("'[R]eview of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence.'") (internal citation omitted); *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008) (quoting *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 70 (1st Cir. 2008)) ("Arbitration awards . . . are not lightly disturbed, and 'Courts must accord substantial deference to the decisions of arbitrators.'"); *Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 48 (Del. Ch. 2005) ("As a general rule, a decision reached by an arbitration panel is not reviewed on the merits by Delaware courts.  The grounds for vacating an arbitration award, where they exist, are narrowly circumscribed."); *Rancone v. Phx. Payment Sys., Inc.*, 2014 WL 6735210, at *4 (Del. Ch. Nov. 26, 2014) (noting that according substantial deference to arbitrators' decisions is "[c]onsistent with public policy favoring alternative dispute resolution") (internal citation omitted); *RBC Capital Mkts. Corp. v. Thomas Weisel Partners, LLC*, 2010 WL 681669, at *10 (Del. Ch. Feb 25, 2010) (noting the "broad deference generally accorded arbitrators"); *see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764 (1983) (noting that a court "may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one"); *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999)) ("[I]n the context of arbitration, 'courts play only a limited role when asked to review the decision of an arbitrator.'"); *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) ("A court's review of an arbitration award is one of the narrowest standards of judicial

5

arbitrator's decision would be nonbinding, the statute provided no guidance as to what weight, if any, was to be given to the arbitrator's decision on appeal.[11]

(6)    For that reason, we cannot conclude that the Superior Court erred by determining that the challenge to the Landlord's compliance with the requirements of 25 *Del. C.* § 7043(b) was not waived, as the statute in its muddled form can be read as indicating that the Superior Court should decide the dispute *de novo*. That

review in all of American jurisprudence. Disagreement with an arbitrator's factual findings does not constitute grounds for a court's rejection of those findings.") (internal citations omitted) (internal quotation marks omitted); Am. Arbitration Ass'n App. R. A-10 ("A party may appeal on the grounds that the Underlying Award is based upon: (1) an error of law that is material and prejudicial; or (2) determinations of fact that are clearly erroneous.").

[11] The General Assembly has now removed the term "nonbinding" from the statute. That removal and the new provision for appeal leaves the statute in a more understandable form, as the new appeal provision provides that any review by the Superior Court will be "on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification under the Code for the community owner's proposed rental increase in excess of the CPI-U." 25 *Del. C.* § 7044. That usage, although loose, is associated with the kind of review that is given to determinations by administrative agencies. Under that form of review, if a factual finding of the initial tribunal is supported by substantial evidence, that finding must be given deference. *See, e.g.*, 29 *Del. C.* § 10142 (providing, similar to the old version of the statutes, that an appeal of an administrative agency's decision shall be "on the record without a trial de novo" but also providing that the trial court's "review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency"); *Angstadt v. Red Clay Consol. Sch. Dist.*, 4 A.3d 382, 387 (Del. 2010) ("On appeal of an administrative agency's adjudication, this Court's sole function is to determine whether the Board's decision is supported by substantial evidence and is free from legal error.") (internal citations omitted); *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1098 (Del. 2006) ("We will accept the Board's findings of fact if there is substantial evidence to support them. Substantial evidence is more than a mere scintilla, but less than a preponderance of the evidence. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings."). As it applies here, the statutory amendment would suggest that any ultimate determination by the arbitrator of whether and to what extent a rent increase is justified should be given deference if based on substantial record evidence and not tainted by any error of law. That said, even the amended statute is less than ideally clear, and it would be helpful if the statute would explicitly incorporate a recognized form of judicial review.

said, we do conclude that the Superior Court erred by failing to give weight to the consequences of its determination. Precisely because the Landlord reasonably understood the Homeowners' Association to have waived the failure to comply argument and so did the arbitrator, the Landlord had no reason to put on evidence to show that it had disclosed all of the material factors resulting in its decision to raise the rent at the meetings with the homeowners. In fairness, any reversal of the arbitrator's decision on this basis, therefore, should have resulted in a remand to the arbitrator to allow him to take additional evidence on this claim.

(7) We implement that remedy now and decline to reach any of the other issues on this appeal. Many of the issues that have been raised can be better addressed in the wake of a fresh arbitration based on the amended form of the statute, which attempted to clarify some of the problematic issues with the initial form.[12] Moreover, a remand will allow the parties to more clearly argue to the arbitrator what the statutory phrase "disclose all of the material factors resulting in the decision to increase the rent"[13] means. But, we do note that nothing about that

---

[12] The new provision for an appeal provides:
> The community owner, the home owners' association, or any affected home owner may appeal the decision of the arbitrator within 30 days of the date of issuance of the arbitrator's decision. The appeal shall be to the Superior Court in the county of the affected community. The appeal shall be on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification under the Code for the community owner's proposed rental increase in excess of CPI-U.

25 *Del. C.* § 7044.

[13] 25 *Del. C.* § 7043(b) (prior version).

statute necessarily precludes a property owner from presenting the key elements of its reason for a rent increase in an effort to reach accommodation with the homeowners, and then only later procuring a formal expert report if a contentious and expensive arbitration ensues. Rather than dilate further on this issue on a confused record,[14] it is best that the arbitrator and the Superior Court, if necessary, consider this issue afresh with new briefs from the parties.

(8) Once the arbitrator concludes whether a meeting valid under 25 *Del. C.* § 7043(b) was held, his task on remand will be complete. He can enter an order, leaving the parties to then present any disagreements with his rulings to the Superior Court. The arbitrator need not revisit his determinations as to the appropriate rent increase. Rather, that and other issues previously determined by the arbitrator shall be revisited by the Superior Court as necessary (*e.g.*, if the

---

[14] By way of example of the confusion in the record, the Landlord faults the arbitrator for failing to give collateral effect to a prior arbitration between the Homeowners' Association, on behalf of certain homeowners who are not parties in this case, and the Landlord. In so ruling, the arbitrator relied upon the following statement by the arbitrator in that case: "It is stipulated that this decision only affects eight tenants and that more tenants will be addressing these problems in the future. This decision should not be considered controlling on whether future rent increases could be justified." Answering Br. Attach. 2 (Arbitrator's Decision, *Bon Ayre Cmty. Ass'n v. Bon Ayre Land, LLC*, No. 4-2013, at 6–7 (Dec. 30, 2013)). We can understand the reluctance of the arbitrator to give the effect to this prior ruling (in which the arbitrator held that the Landlord had justified a rent increase from $309 to $349 per month) in view of this ambiguous statement about it being "stipulated" that his ruling would only have this effect. Although it seems unlikely that past proceedings involving homeowners' associations and property owners should have no collateral effect, parties can agree that such proceedings will not have that effect. The record here is confusing, and it would be hazardous to second-guess the arbitrator as to this issue without a firmer understanding of what the Landlord and the Homeowners' Association understood when they engaged in a prior arbitration about eight different homeowners' rent, and what they told that arbitrator.

8

arbitrator determines that the meeting was valid and his determination is upheld by the Superior Court).  In any review of that determination, the arbitrator's thorough decision on the economic merits of the rent increase dispute, or any other ruling of the arbitrator, the Superior Court shall apply the amended statute.[15]

(9)    Furthermore, our remand will allow the parties to consider their respective positions with cool heads and warm hearts.  They can decide whether a new 25 *Del. C.* § 7043(b) meeting should be held, or whether, in retrospect, they can live with the arbitrator's original decision, which assessed the record evidence carefully and came to a conclusion that the Landlord was justified in raising the rent substantially above the applicable consumer price index, but not to the levels it sought, even though that decision did not give either side everything it wanted.  If they cannot, then the parties can proceed before the arbitrator anew, formally brief to him the complicated legal issues they now present, and accord him the opportunity to consider them under the amended statute.[16]

---

[15] *See supra* note 11.

[16] Finally, we note that the arbitrator took this contentious case very seriously.  Due to the burden of the remand upon him, the parties are expected to share the costs of the arbitrator's fee, as if this were an entirely new arbitration. The remand is occasioned by circumstances having nothing to do with the arbitrator's own performance, because he addressed thoroughly the issues fairly presented to him by the parties.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED and the case is REMANDED to the arbitrator for further proceedings consistent with this Order.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice