**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 3, 2024

Nathan D. Barillo, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 300
Wilmington, DE 19801

Edward J. Fornias, III, Esquire
Law Office of EJ Fornias, P.A.
615 West 18th Street, Lower Level
Wilmington, DE 19802

RE: *Orlando Cedres, et al. v. Geoffrey Servs. Corp., et al.,*
C.A. No. 2020-0745-MTZ

Dear Counsel:

The plaintiffs have asked this Court to enter a judgment enforcing a settlement agreement against both the defendants and their affiliated entities, which are not parties to this action. Because this Court lacks jurisdiction to enter a judgment against those nonparties, the plaintiffs' motion is denied as to the nonparties. It is granted as to the defendants named in this action.

I.      BACKGROUND

Plaintiffs Orlando Cedres, LCK Management, Inc., and Geoffrey Metro Management, LLC (together, "Plaintiffs") initiated this action against defendants Geoffrey Services Corporation and Robert Hersam (together, "Defendants") on September 1, 2020.[1] After two years of litigation, Plaintiffs, Defendants, and

---

[1] Docket item ("D.I.") 1.

nonparties Geoffrey Services Metro Maintenance Corporation, Wilmont Consulting, Ltd., and 16 Edgehill Court Corporation (together, the "Nonparties," and together with Defendants, the "Settling Parties") entered into a settlement agreement (the "Settlement Agreement").[2]  The Nonparties signed the Settlement Agreement as parties to it.[3]  The Nonparties were not named as defendants in this action or served with process.  On December 12, 2022, I granted a joint stipulation and order of dismissal filed by Plaintiffs and Defendants that dismissed all claims with prejudice and agreed this Court would retain jurisdiction to enforce the Settlement Agreement.[4]

In the Settlement Agreement, Plaintiffs, Defendants, and the Nonparties all agreed to an alternative dispute resolution provision (the "ADR Provision") referring "all issues and disputes" regarding payment obligations under various service agreements among Plaintiffs and the Settling Parties to Eric Anderson (the "Independent Party").[5]  On May 19, 2023, the Independent Party entered a final determination concluding the Settling Parties, jointly and severally, were to pay

---

[2] D.I. 102, Ex. A [hereinafter "Agr."].

[3] Agr.

[4] D.I. 97.

[5] Agr. § 1.4 ("Third Party Resolution of Financial Disputes.").

Orlando Cedres $169,710.29 within ten business days.[6] No payment has been made to Cedres. On October 3, Plaintiffs filed a "Motion to Enforce Settlement Agreement," seeking to enforce the Independent Party's final determination via a judgment against Defendants and the Nonparties (the "Motion").[7] The parties briefed the Motion, and I took it under advisement on November 27.[8]

## II.    ANALYSIS

Plaintiffs seek a judgment enforcing the Independent Party's determination against the Defendants and Nonparties. The Settlement Agreement and its ADR Provision are binding on its signatories, including the Nonparties.[9] The Settlement Agreement defines the "Hersam Parties" as the Defendants and Nonparties, and provides "[a]ny payment obligation of any Hersam Party shall be joint and several among all Hersam Parties, and each of the Hersam Parties hereby guarantees the payment of any amounts of the Final Amounts Due which are owed by any other Hersam Party."[10]

---

[6] D.I. 102, Ex. B.

[7] D.I. 102.

[8] D.I. 105; D.I. 107; D.I. 109.

[9] Agr.; D.I. 105.

[10] Agr. § 1.4(d).

Still, Defendants argue the Independent Party overstepped his authority by holding the Nonparties liable because the Nonparties (i) were not named as defendants or served with process in this action, (ii) did not have the opportunity to respond or raise defenses to any of the claims in this action, and (iii) were not able to participate in the proceedings in front of the Independent Party.[11] Because I interpret the ADR Provision as an arbitration provision, and because these arguments sound in procedural arbitrability, I conclude these arguments are for the Independent Party, not this Court.

Defendants also argue this Court does not have jurisdiction in this action to enter a judgment against the Nonparties.[12] Setting aside for a moment whether Defendants have standing to make these arguments on the Nonparties' behalf, Plaintiffs have offered no path to jurisdiction to enter a judgment against the Nonparties.

**A. The Independent Party Served As An Arbitrator.**

I begin with whether this Court should properly consider the Nonparties' procedural objections to the proceedings before the Independent Party. The Court's review of that issue depends on whether the ADR Provision calls for an

---

[11] D.I. 105.

[12] *Id.*

arbitration or an expert determination.[13]  "If the Dispute Resolution Provision calls for an arbitration, then the familiar doctrines of substantive and procedural arbitrability will govern."[14]  "If the Dispute Resolution Provision calls for an expert determination . . . the court must interpret and apply the contract."[15]

"Binding alternative dispute mechanisms fall along a spectrum:  [a]t one end is an arbitration that has the look and feel of a judicial proceeding, except that it is handled privately and with less formality."[16]  "At the other end is an expert determination in which an expert with technical skills or knowledge makes a determination, largely on its own, and with only limited party input."[17]  "Using the word 'arbitrator' or 'arbitration' provides a strong signal that a legal arbitration is intended, just as using the phrase 'as an expert and not as an arbitrator' strongly signals an expert determination."[18]  "But labels are not dispositive."[19]  "If the

---

[13] *See Penton Bus. Media Hldgs., LLC v. Informa PLC*, 252 A.3d 445, 456 (Del. Ch. 2018) ("Delaware decisions have maintained the distinction between an arbitration and an expert determination.").

[14] *Id.* at 454.

[15] *Id.*

[16] *Paul v. Rockpoint Grp., LLC*, 2024 WL 89643, at *10 (Del. Ch. Jan. 9, 2024) (quoting *ArchKey Intermediate Hldgs. Inc. v. Mona*, 302 A.3d 975, 989 (Del. Ch. 2023)).

[17] *Id.*

[18] *Paul*, 2024 WL 89643, at *10.

[19] *Id.*

parties have used one term but constructed a mechanism that operates like the other, then a court will give effect to the parties' actual agreement."[20]

"To properly characterize a dispute resolution mechanism, a court applies the authority test."[21] The framework adopted by the Delaware Supreme Court depends on the type and scope of authority delegated to the decisionmaker.

> In the case of a typical expert determination, the authority granted to the expert is limited to deciding a specific factual dispute concerning a matter within the special expertise of the decision maker, usually concerning an issue of valuation. The decision maker's authority is limited to its mandate to use its specialized knowledge to resolve a specified issue of fact. The parties agree that the expert's determination of the disputed factual issue will be final and binding on them. The parties are not, however, normally granting the expert the authority to make binding decisions on issues of law or legal claims, such as legal liability.[22]

On the other hand,

---

[20] *Id.* (citing *ArchKey Intermediate Hldgs. Inc. v. Mona*, 302 A.3d 975, 992 (Del. Ch. 2023)); *see Penton*, 252 A.3d at 462 ("It is even possible to envision a setting where the parties included 'expert not arbitrator' language, but then constructed a dispute resolution provision that had numerous features associated with commercial arbitration.").

[21] *Paul*, 2024 WL 89643, at *10.

[22] *Penton*, 252 A.3d at 464 (quoting Comm. on Int'l Commercial Disputes, N.Y.C. Bar Ass'n, *Purchase Price Adjustment Clauses and Expert Determinations: Legal Issues, Practical Problems and Suggested Improvements* 4 (2013)); *see Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 618 (Del. 2023) (noting the framework used in *Penton* provides "useful guidance in discerning whether a dispute-resolution provision contemplates arbitration or an extern determination").

If the proceeding is an arbitration, this means that the parties have intended to delegate to the decision maker authority to decide all legal and factual issues necessary to resolve the matter. The grant of authority to an arbitrator, but not to an expert, is analogous to the powers of a judge in a judicial proceeding. The parties expect the arbitrator to rule on legal claims, legal causes of action and to award a legal remedy, such as damages or injunctive relief. The parties, by agreeing to arbitration, are selecting a form of dispute resolution that by its very definition is understood as granting the decision maker the authority to make binding decisions of both law and fact.[23]

Under this framework, the ADR Provision provided for arbitration. The

ADR Provision reads in relevant part:

The parties and the Independent Party shall follow the procedures set forth [in the Rules of Engagement for Independent Party] attached hereto and incorporated herein, following which the Independent Party shall make a final and binding determination with respect to (i) the legal obligations of the Parties to make Payment Obligations as claimed in the Claim Documents, (ii) the amounts of such payment Obligations remaining due and unpaid as of the date of such determination, and (iii) the entitlement of any Parties to the recovery of legal fees and court and litigation costs associated with the Action and/or the Transaction Documents and the amounts due as a result (collectively, the "Matters in Controversy"). In making such determination, the Independent Party shall be functioning as an expert and not as an arbitrator. The Parties shall cooperate reasonably with the Independent Party during the term of its engagement and shall use commercially reasonable efforts to cause the Independent Party to resolve all remaining disagreements with respect to the Matters in Controversy, including each of the components thereof, in accordance

---

[23] *Penton*, 252 A.3d at 464 (quoting Comm. on Int'l Commercial Disputes, N.Y.C. Bar Ass'n, *Purchase Price Adjustment Clauses and Expert Determinations: Legal Issues, Practical Problems and Suggested Improvements* 4 (2013)).

> with the timetable set forth [in the Rules of Engagement for Independent Party]. In resolving any disputed item, the Independent Party may not assign a value to any item greater than the greatest value for such item claimed by the Party seeking payment thereof. The Independent Party's determination as to the Matters in Controversy, including without limitation the sums due any Party to any other Party (the "Final Amounts Due"), shall be based solely on written materials submitted by the Parties in accordance with [the Rules of Engagement for Independent Party] (i.e., not on independent review) and on the definitions included herein and principles set forth herein and in the Transaction Agreements. The determination of the Independent Party shall be conclusive and binding upon the parties hereto and shall not be subject to appeal or further review, in each case, absent manifest mathematical error.[24]

Further, the Independent Party's engagement letter waived "any argument to challenge the Independent Party's findings of the Final Amounts Due because [the findings] contain determinations of law (or mixed determinations of law and fact)."[25]

The ADR Provision described the Independent Party as an expert, not an arbitrator. And the second determination, regarding the amount of payment obligations, is the type of factual determination made by an expert. But the first and third determinations required the Independent Party to make judicial determinations of legal obligations and the prevailing party, "not just of the

---

[24] Agr. § 1.4(b).

[25] D.I. 102, Ex. B. at 13 n.21.

proceedings before the Independent Party but the entire litigation."[26]  Those tasks require authority resembling that of an arbitrator.

The ADR Provision also incorporates by reference a set of guidelines for the Independent Party to use to "analyze and resolve the Parties' dispute" that sound in arbitration.[27]  The guidelines afforded the parties (i) "a conference call with the Independent Party to provide background and frame out the relationships and issues between the parties," (ii) "independent, 'ex-parte'" call[s] with the Independent Party to "communicate his or its position on the issues involved," and (iii) the opportunity to submit first "statements and supporting documentation relating to any claims they may have for unpaid Payment Obligations (the 'Claim Documents')" and "a memorandum responding to the Claim Documents submitted to the Independent Party by the other [p]arty."[28]  These guidelines create the look and feel of a judicial proceeding.  The ADR Provision calls for arbitration.

### B.    The Nonparties' Concerns Are For The Arbitrator.

From there, the familiar doctrines of substantive and procedural arbitrability govern the Settling Parties' disagreement with the Independent Party's process and

---

[26] *Id.* at 13–14.

[27] Agr., Ex. D.

[28] *Id.*; Agr. § 1.4(a).

determination.[29]  "In deciding whether a claim should be decided by an arbitrator as opposed to a court, Delaware Courts focus on whether the questions presented involve 'procedural' versus 'substantive' arbitrability."[30]  "Decisions on substantive arbitrability are limited to 'gateway questions' about the existence, validity, and enforceability of an arbitration agreement."[31]  "Courts presumptively decide questions of substantive arbitrability."[32]  "Procedural arbitrability encompasses questions about compliance with procedural aspects of the arbitration agreement, including 'whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been

---

[29] A threshold question is whether I should analyze this dispute under the Federal Arbitration Act or the Delaware Uniform Arbitration Act.  The Settlement Agreement is governed by Delaware law and does not contain arbitration-specific provisions.  Because "Delaware arbitration law mirrors federal law," I do not focus on this distinction.  *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

[30] *SRG Glob., Inc. v. Robert Fam. Hldgs., Inc.*, 2010 WL 4880654, at *5 (Del. Ch. Nov. 30, 2010).

[31] *ArchKey Intermediate Hldgs. Inc. v. Mona*, 302 A.3d 975, 992 (Del. Ch. 2023) (citing *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *12 (Del. Ch. Aug. 9, 2012), *aff'd*, 72 A.3d 78 (Del. 2013)).

[32] *Id.* at 992 (citing *James & Jackson, LLC*, 906 A.2d at 79).

met, as well as allegations of waiver, delay or a like defense to arbitrability.'"[33]

"Arbitrators presumptively decide questions of procedural arbitrability."[34]

Defendants argue the Independent Party did not have the authority to hold the Nonparties liable because the Nonparties were not named as defendants or served with process in this action and did not have the opportunity to respond or raise defenses to any claims before this Court.[35] Whether these conditions were necessary to subject, and bind, the Nonparties to arbitration under the ADR Provision is a question of procedural arbitrability.[36] Those procedural issues are presumptively for the Independent Party, not the Court.

---

[33] *Id.* at 992–93 (quoting *Viacom Int'l, Inc. v. Winshall*, 2012 WL 3249620, at *12 (Del. Ch. Aug. 9, 2012), *aff'd*, 72 A.3d 78 (Del. 2013)).

[34] *Id.* at 993 (citing *James & Jackson, LLC*, 906 A.2d at 79).

[35] D.I. 105.

[36] *See, e.g.*, *Orix LF, LP v. INSCAP Asset Mgmt., LLC*, 2010 WL 1463404, at *8 (Del. Ch. Apr. 13, 2010) (concluding that whether a party's consent was contractually required for the other party to initiate arbitration asks whether a condition precedent to commencing arbitration has been met, which is a question of procedural arbitrability); *Aveta Inc. v. Bengoa,* 2008 WL 5255818, at *4 (Del. Ch. Dec. 11, 2008) (concluding that whether plaintiffs delivered documents to defendant under the conditions precedent to arbitration relates "not to the subject matter of the dispute but rather the entitlement of the plaintiffs to seek relief," which is an issue of procedural arbitrability); *TMIP Participants LLC v. DSW Grp. Hldgs. LLC*, 2016 WL 490257, at *11 (Del. Ch. Feb. 4, 2016) ("Prerequisites for arbitrability such as time limits and other issues concerning whether a party followed the proper procedure for seeking arbitration are questions of procedural arbitrability to be decided by the arbitrator.").

Defendants also attack the validity of the determination by challenging the process before the Independent Party.[37] To the extent Defendants look to this Court to vacate the Independent Party's determination on the grounds that he "overstepped his authority" because the Nonparties "were [not] able to participate in the proceedings in front of [the Independent Party]," their two-paragraph opposition devoid of legal citation or detail did not establish grounds to do so.[38]

### C. This Court Does Not Have Jurisdiction Over The Nonparties In This Action.

With procedural attacks on the Independent Party's proceedings delegated to the Independent Party, I turn to whether this Court can enter a judgment against both Defendants and the Nonparties for their liability as determined by the

---

[37] D.I. 105.

[38] *Id.*; *see Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 48, n.7 (Del. Ch. 2005) (citing 10 *Del. C.* § 5714(a)) (relating the five "narrowly circumscribed" statutory grounds for vacating an arbitration award, including that "the arbitrator exceeded its powers, or so imperfectly executed its powers that a final and definite award upon the subject matter submitted was not made" or "refused to postpone the hearing upon sufficient cause being shown therefor, or refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 5706, or failed to follow the procedures set forth in this chapter, so as to prejudice substantially the rights of a party"); D.I. 102, Ex. B. at 3–6 (explaining the Independent Party (i) conducted two joint calls with the Plaintiffs and Settling Parties, (ii) allowed the Plaintiffs and Settling Parties to submit documents to support their claims and requests for attorney's fees and costs, (iii) provided the Plaintiffs and Settling Parties with time to answer questions raised by the Independent Party, and (iv) held an ex-parte call with Hersam, who signed on behalf of all the Hersam Parties in the Settlement Agreement, and their attorney EJ Fornias to discuss the claims).

Independent Party. Defendants argue this Court cannot enter that judgment because it lacks jurisdiction over the Nonparties in this action, as those entities were not served with Plaintiffs' complaint and did not have an opportunity to respond or raise defenses to Plaintiffs' claims.[39]

Plaintiffs argue this Court can exercise jurisdiction over the Nonparties under a theory of privity and Court of Chancery Rule 71.[40] Rule 71 states

> when an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if that person were a party, and, when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if that person were a party.[41]

There are few Delaware cases applying Rule 71. All of them address civil contempt and involve a party seeking to enforce an existing court order against a

---

[39] D.I. 105.

[40] D.I. 107. Plaintiffs assert "this Court has held that judgments and orders bind not just the named defendants, but also those 'identified with them in interest, in privity with them, represented by them or subject to their control.'" *Id.* at 2 (quoting *In re Mobilactive Media, LLC*, 2018 WL 5046282, at *2 (Del. Ch. June 28, 2018)). Plaintiffs argue the Nonparties are "in interest, privity with, represented by, and/or subject to the control of Robert Hersam, as demonstrated by the fact that he signed for each of these entities in the December 7, 2022 Settlement Agreement." *Id.*

[41] Ct. Ch. R. 71.

nonparty.[42]  *In re Tyson Foods* explains that Rule 71 provides a mechanism for holding a director in contempt of a court order binding the corporation in a derivative action "by the same process as if that person were a party."[43]  *Deutsch v. ZST Digital Networks, Inc.* discusses Rule 71 as an example of this Court's Rules "recogniz[ing] that in appropriate circumstances, an order can be enforced against non-parties."[44]  *Deutsch* explains that under Rule 65, and the theory of privity more generally, where an order binds the parties and those in privity with them, Rule 71 provides the process for enforcing that order against nonparties.[45]  And *In re Mobilactive Media* explains that Rules 70 and 71 "contemplate the enforcement of coercive orders of the Court" against those in privity with the named parties, and are not to be used to enforce a money judgment.[46]

None of these cases wield Rule 71 to enter an order in the first instance, much less a judgment, against a nonparty.  In fact, a broad reading of *In re Mobilactive Media* counsels against that use.  None of these cases question the

---

[42] *E.g.*, *In re Tyson Foods, Inc.*, 919 A.2d 563, 598–99 (Del. Ch. 2007); *Deutsch v. ZST Digit. Networks, Inc.*, 2018 WL 3005822 (Del. Ch. June 14, 2018); *In re Mobilactive Media, LLC*, 2018 WL 5046282, at *3–4 (Del. Ch. June 28, 2018).

[43] *Tyson*, 919 A.2d at 598–99 (quoting Ct. Ch. R. 71.).

[44] *Deutsch*, 2018 WL 3005822 at *10 (citing Ct. Ch. R. 65(d) and Ct. Ch. R. 71).

[45] *Id.*

[46] *Mobilactive*, 2018 WL 5046282, at *3–4.

Court's jurisdiction to enter the original order that is being enforced via contempt. The United States District Court for the District of Delaware has concluded these cases did not support using Rule 71 to enter a judgment against a nonparty on the grounds that the nonparty was the alter ego of a party.[47] And Court of Chancery Rule 82 counsels against using Rule 71 to exercise jurisdiction over nonparties: it states, "These rules shall not be construed to extend or limit the jurisdiction of the Court of Chancery or to affect the venue of actions therein."[48]

Rule 71 of the Federal Rules of Civil Procedure ("Federal Rule 71") is nearly identical to Rule 71, and its jurisprudence provides additional guidance.[49] "[T]he history of Equity Rule 11, the predecessor to [Federal] Rule 71,

---

[47] *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, 2017 WL 11505353, at *3 (D. Del. Dec. 14, 2017) ("[T]he court does not see a clear path to finding that the state of Delaware provides a procedure under Del. Ch. Ct. R. 71 for enforcing a judgment against nonparties based on a veil piercing theory").

[48] Ct. Ch. R. 82; *see Del. Bankers Ass'n v. Div. of Revenue of Dep't of Fin.*, 298 A.2d 352, 357 (Del. Ch. 1972) (citing Rule 82 in determining "Rule 23, as is the case with all other rules of this Court, . . . shall not be construed to extend or limit the jurisdiction of the Court of Chancery" in the context of a class action).

[49] *See* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."). When turning to the Federal Rules for guidance, Delaware courts caution that "[d]ecisions interpreting the Federal Rules of Civil Procedure are usually of great persuasive weight in the construction of parallel Delaware rules; however, such decisions are not actually binding upon Delaware courts." *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988) (citation omitted).

demonstrates that the rule was not intended to 'permit broad process against non-parties.'"[50]  "[W]hen enforcing a judgment against non-parties, [Federal] Rule 71 is explicitly restricted to circumstances where enforcement does not violate due process or is otherwise lawful."[51]  "[Federal] Rule 71 does not say when process may be issued against nonparties."[52]  "[Federal] Rule [71] only provides that when an order may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."[53]  The federal courts' interpretation of Federal Rule 71 cautions against applying Rule 71 to expand jurisdiction over nonparties.

Rule 71 cannot support Plaintiffs' request for an order—a judgment, no less—in the first instance against the Nonparties.  Rule 71 provides the process a party may use to enforce an existing court order that binds party agents and affiliates against a nonparty.  The Independent Party's decision is not an existing court order.  Because this Court has not yet issued an order, Rule 71 offers no basis to enforce any such order against the Nonparties.  And nothing in Rule 71 provides

---

[50] *Vehicle Interface*, 2017 WL 11505353, at *3 (quoting *In re Emp. Discrimination Litig. Against State of Ala.*, 213 F.R.D. 592, 599 (M.D. Ala. 2003)).

[51] *Id.* (quoting 12B Charles A. Wright et al., *Federal Practice and Procedure* 1047 (Apr. 2017)).

[52] 13 James W. Moore et el., *Moore's Federal Practice* § 71.04 (3d ed. 2024).

[53] *Id.*

the power to issue a new order against a nonparty. More fundamentally, nothing in Rule 71 provides jurisdiction over a nonparty who has not been served with process.[54] The authorities interpreting Rule 71 and its federal analogue, and Rule 82, counsel against using Rule 71 to supply jurisdiction where it did not previously exist.

I hold the line drawn by the District of Delaware and decline to expand Rule 71's application from its intended purpose of enforcing an existing order against a party's nonparty affiliate to entering a judgment against a nonparty. Rule 71 does not provide this Court with jurisdiction to enter a judgment against the Nonparties in this action. Plaintiffs do not argue any other grounds for this Court to extend jurisdiction over the Nonparties. I therefore do not reach whether the Nonparties are in privity with Defendants. As to the Nonparties, the Motion is denied.

---

[54] Ct. Ch. R. 4(b) ("A summons, or a copy of the summons if addressed to multiple defendants, shall be issued for each defendant to be served."); *Thomas v. Nationstar Mortg.,* LLC, 2015 WL 5766775, at *2 (Del. Ch. Sept. 18, 2015) ("Personal jurisdiction must be effected through proper service." (internal quotation marks omitted) (quoting *Shurr v. Mun. City of Newark, Del.*, 2004 WL 332508, at *1 (D. Del. Jan. 28, 2004))).

### III. CONCLUSION

Plaintiffs' motion is **GRANTED** as against Defendants but **DENIED** as against the Nonparties. Plaintiffs and Defendants shall submit an amended proposed final order.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*