# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Evolve Growth Initiatives, LLC; Evolve Holdco, Inc.; and Evolve Intermediate Holding LLC,<br><br>Plaintiffs and Counterclaim Defendants<br><br>v.<br><br>Equilibrium Health Solutions LLC; M&A Healthcare LLC; Ducat HC LLC; and Daryl Hagler,<br><br>Defendants and Counterclaim Plaintiffs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2022-1113-SG |

## MEMORANDUM OPINION

Date Submitted:  June 16, 2023
Date Decided:  July 26, 2023

Kenneth J. Nachbar and Alexandra M. Cumings of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; OF COUNSEL: Andrew Z. Schwartz, Euripides Dalmanieras, and Christian A. Garcia of FOLEY HOAG LLP, Boston, Massachusetts, *Attorneys for Evolve Growth Initiatives, LLC, Evolve Holdco, Inc., and Evolve Intermediate Holding LLC*.

Rudolf Koch, Travis S. Hunter, and Sara M. Metzler of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Motty Shulman of CENTRICITY LAW PLLC, New York, New York; Robin A. Henry of FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York, New York, *Attorneys for Equilibrium Health Solutions LLC, M&A Healthcare LLC, Ducat HC LLC, and Daryl Hagler*.

**GLASSCOCK, Vice Chancellor**

Judges have—should have—as their goal, doing justice. Judges are inclined, or perhaps I should say "conditioned" in the Skinnerian sense, to achieve that goal from consideration of the record, whether on the pleadings (at the motion to dismiss stage) or up through a trial on the merits. It is that conditioning to evidentiary-based decision making that makes the decision explained below difficult, for this judge at least.

That decision regards an action to enforce an arbitration award. The arbitration proceeding and the resulting award are flawed, in the sense that one might use that term in a review of their substance. Briefly, the arbitration chiefly addressed the contractual rights arising from breach of representations and warranties in an agreement to purchase an LLC. The complaint in arbitration also stated claims based on fraud or negligent misrepresentation. The latter claims were only tangentially referenced in the arbitral litigation, and not relied on, explicitly, at least, by the arbitral panel (the "Panel"). This causes a problem for the reasons that follow.

First, in the interest of clarity, a note about nomenclature. The buyers in the transaction at issue are the parties who were the claimants in the arbitration, and who have filed this petition for confirmation of the arbitration award. The sellers (and seller representative) were parties respondent in the arbitration, as well as in this litigation. In the instant litigation, the parties have styled the buyers as "Plaintiffs" and the sellers and seller representative as the "Defendants." I employ that usage

here. For the sake of clarity, I also employ it in describing the same parties in arbitration, so the party claimants in arbitration I refer to as the Plaintiffs there, and the party respondents in arbitration I refer to as the Defendants. When quoting the proceedings in arbitration, I have placed "Plaintiffs" and "Defendants" in brackets, connoting replacement of the several terms used in that proceeding.

In the arbitration, both Plaintiffs and Defendants generally referred to all Defendants subject to arbitration before the Panel as the "[Defendants]." These included the entities liable for indemnification for simple breaches of representations and warranties under the contract. It also included an individual, Mr. Daryl Hagler, the "Seller Representative." Hagler was not liable for simple breaches of reps and warranties under the contract, but could be liable for damages arising from his fraud or intentional acts or gross negligence. Hagler was a substantial actor with respect to the underlying transaction, and was a named defendant in the complaint in arbitration.

The arbitral award the ("Award") did not differentiate among the Defendants. Instead, based upon breaches of the reps and warranties, the Panel found all Defendants jointly and severally liable in damages for the claims in arbitration. The parties liable included Hagler. The Panel found breaches of representations and warranties that could, presumably, result from facts also supporting liability for Hagler's fraud or gross negligence, but the Award was silent in this regard. I do

2

note that the Award provided that the facts before it "strongly support" intentional misrepresentation, but did not base liability on such.

On cross-motions for summary judgement, the Defendants object to confirmation of the award, and seek vacatur, only as it pertains to Mr. Hagler. As the facts below illustrate, the Panel focused on the contractual claims, not on fraud or on intentional or negligent misrepresentation. According to the Defendants, this renders the award against Hagler legally incoherent, and thus the award of the Panel should be vacated.

It is true that the Panel did not focus on the different theories that could lead to liability on behalf of Hagler, as opposed to the entity defendants. The Panel made clear that its decision rested on violation of the reps and warranties. Perhaps this was oversight, perhaps it was error, perhaps it occurred because all Parties' counsel failed adequately to alert the Panel to the difference among the Defendants. The latter oversight itself could have been strategic, or merely sloppy. If I sat as an appeals court to the Panel, I would not hesitate to send it back to resolve these issues. But I do not.

I must resist my temptation to address the Panel's decision on the merits, and instead consider what is in front of me. Confirmation of an arbitration award is a kind of specific performance of a contract to arbitrate. The parties have agreed, for reasons of their own, to submit certain disputes to an arbitration, and to accept the

results of the arbitration, absent fraud on the part of the arbitrator or certain other very limited exceptions. The value of such a submission lies in reduced cost to resolve disputes subject to arbitration; that value would be lost if the decision were subject to substantive review. To protect this value, the applicable law here—the Federal Arbitration Act—limits review of arbitrations under its aegis to the most narrow of considerations. These are composed of four grounds for vacatur: where the award is the product of fraud; where the arbitrator was not impartial or is otherwise corrupt; where the arbitrator engaged in egregious procedural misconduct; or where the arbitrator so exceeded her power or applied it in a way such that the award was not effectively made upon the subject matter submitted. The Defendants here advance only the latter proposition, arguing that the award against Hagler was unsupported in facts or law. Such a proposition requires a high showing; that the record is entirely bare of all support justifying the award.[1] "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision."[2]

---

[1] *See Carl Zeiss Vision, Inc. v. Refac Holdings, Inc.*, 2017 WL 3635568, at \*4 (Del. Ch. Aug. 24, 2017).

[2] *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 751 (Del. 2014) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

4

Of course, as the previous quote demonstrates, preserving the value of arbitral proceedings itself entails a potential cost to the contracting parties; the risk of receiving an arbitral decision that is questionable under the law and facts, but that is nonetheless—not coming within the narrow window of judicial oversight—not reviewable. That is the bargain the parties have struck here. Because I find that a theory of liability against Hagler was pled in arbitration, and minimally before to the Panel, I cannot disturb the decision in arbitration presented for confirmation. Accordingly, I confirm the decision imposing liability on all Defendants, and deny vacatur.[3] A fuller explanation follows the facts.

## I. FACTS

This matter involves the arbitration Award,[4] that Plaintiffs have requested I confirm in full.[5] This Award, which the Defendants argue is deficient and should be vacated,[6] grants the Plaintiffs monetary damages arising from a Membership Interest Purchase Agreement (the "MIPA")[7] and the legal fees accrued in pursuit of those

---

[3] As the Stoic philosopher Johnny Cash described it, "I don't like it but I guess things happen that way." Johnny Cash, Guess Things Happen That Way (Sun Records 1958).
[4] Verified Appl. Confirm and Enter J. Final Arbitration Award Ex. A ("Award"), Dkt. No. 3.
[5] Verified Appl. Confirm and Enter J. Final Arbitration Award, Dkt. No. 1.
[6] Equilibrium Health Solutions LLC, M&A Healthcare LLC, Ducat HC LLC and Daryl Hagler's Answer to the Verified Compl. and their Verified Countercls. ("Defendents' Answer"), Dkt. No. 9.
[7] Verified Appl. Confirm and Enter J. Final Arbitration Award Ex. B ("MIPA"), Dkt. No. 3.

damages.[8]  In doing so, the Award held Defendant Daryl Hagler personally liable for both the damages and the Plaintiffs' legal fees.[9]  Defendants argue that this finding is unsupported, and that the three-person arbitration panel (the Panel) manifestly disregarded the law because by the plain terms of the MIPA, Hagler is not liable.  Defendants contend that I should vacate the Award because the Panel disregarded the law (Count I), because there is no record support for Hagler's personal liability (Count II), and because the Panel exceeded the scope of what it was to decide (Count III).[10]

### A. The Parties

Defendants Equilibrium Health Solutions LLC ("Equilibrium"), M&A Healthcare LLC, and Ducat HC LLC (collectively the "Sellers") sold Plaintiff Evolve Growth Initiatives LLC ("Evolve") to Evolve Acquisition LLC pursuant to the MIPA.[11]  Defendant Daryl Hagler, an owner of Equilibrium, served as the MIPA defined "Seller Representative" which granted him power of attorney for the Sellers.[12]  Hagler, however, is not a Seller under the terms of the MIPA.[13]  Plaintiffs

---

[8] Award 95–96.
[9] Award 95–96.
[10] Defendents' Answer.  The Defendants abandoned Count IV and I dismissed Counts V and VI of Defendents' counterclaims before confirming the amount of the award at oral argument.  Tr. 5.16.2023 Cross-Mots. Summ. J., Dkt. No. 38.
[11] MIPA 1, Annex I.
[12] Defendents' Answer ¶ 20; MIPA §§ 11.1–11.2.
[13] MIPA 1, §§ 11.1–11.2, Annex I.

6

Evolve, Evolve Intermediate Holdings LLC, and Evolve Holdco Inc. are "Buyer Indemnified Persons" as defined in the MIPA.[14]

*B. The Transaction*

The facts, as they relate to the transaction that underlies the dispute, arise primarily from the MIPA.

In Section 3, Sellers, among other facts, represented and warrantied that:

The Financial Statements (including the notes thereto, if any) have been prepared from, and are consistent with, the books and records of the Company, and fairly present the financial condition of the Company and, as applicable, the Business, as of the dates thereof, and the results of operations and cash flows for the period then ended, and have been prepared in accordance with GAAP (except that the interim Financial Statements are subject to normal and recurring year-end adjustments, none of which are, individually or in the aggregate, material in amount or effect and do not include the footnotes).[15]

[Evolve] has established and adhered to a system of internal accounting controls that are designed to provide reasonable assurance regarding the reliability of financial reporting . . . [and that] . . . [t]here has never been (i) any significant deficiency or material weakness in any system of internal accounting control used by [Evolve.][16]

. . . .

Neither this Agreement nor any written statement, report or other document furnished or to be furnished by the Sellers or the Company pursuant to [the MIPA] or in connection with the transactions contemplated hereby contains, or will contain, any untrue statement of

---

[14] MIPA § 9.2(a)(i); Defendants' Answer ¶¶ 14–16.
[15] MIPA § 3.4(a).
[16] MIPA § 3.4(b).

a material fact or omits, or will omit, to state a material fact necessary to make the statements contained herein or therein not misleading.[17]

Section 9 of the MIPA deals with indemnification for a number of claims that could arise and lays out the procedure for disposing of these claims.[18]

The Sellers, pursuant to Section 9.2, are responsible for "jointly and severally" indemnifying Evolve Acquisition LLC and its affiliates "in respect of any Losses which [Evolve Acquisition LLC and its affiliates] may suffer as a result of, in connection with or relating to any of" fourteen delineated types of claims.[19] These claims include those arising from breaches of or inaccuracies in the representations and warranties and claims arising from the calculation of the purchase price.[20]

The MIPA's arbitration provision, located in Section 9.6, includes the following:

> (a) Any dispute or controversy arising between the parties to this Agreement in connection with the amount of any indemnity owed pursuant to Section 9.2 or Section 9.3 shall be determined and settled by arbitration in New York, New York, by a panel of three members who shall be selected, and such arbitration shall be conducted, in accordance with the commercial arbitration rules of the American Arbitration Association, as then in effect . . . .
>
> (b) Notwithstanding anything to the contrary in this Agreement, each party retains the right to bring a proceeding before a court (or seek judicial assistance) to compel arbitration in accordance with Section

---

[17] MIPA § 3.30.
[18] MIPA § 9.
[19] MIPA § 9.2(a)(i).
[20] MIPA § 9.2(a)(i).

8

9.6(a), enforce an arbitration award granted pursuant to the procedure set forth in Section 9.6(a) or to obtain injunctive relief hereunder.[21]

In conjunction with the $83 million base purchase price, which was based on a purported EBITDA of $7.96 million,[22] the MIPA provided for a $10 million indemnification escrow.[23] The transaction closed on December 20, 2019.[24]

*C. Hagler*

Hagler, as noted, was not a "Seller" under the MIPA.[25] He was "Seller Representative."[26]

Section 11 of the MIPA defines the role and authority of the "Seller Representative."[27] Specifically, "Seller Representative" is the Sellers' "true and lawful attorney-in-fact and exclusive agent" with the power to bind the Sellers.[28] So long as the Seller Representative was acting within that capacity and in good faith, "[e]xcept in cases of fraud, intentional misconduct or gross negligence, Seller Representative will have no liability to Buyer" and also has the right to indemnification and reimbursement from Sellers.[29]

---

[21] MIPA § 9.6.
[22] Award ¶¶ 6 n.2–4, 195–98.
[23] Defendants' Answer ¶ 27; MIPA Exhibit A.
[24] Defendants' Answer ¶ 4.
[25] Defendants Answer ¶ 2; MIPA 1, Annex I.
[26] Defendants Answer ¶ 2; MIPA §§ 11.1–11.2.
[27] MIPA § 11.
[28] MIPA § 11.2(a).
[29] MIPA § 11.2(e).

I note that Hagler was not picked from obscurity to serve as the Sellers' mouthpiece. Hagler, as alleged in the arbitration demands,[30] "owns all or part of Equilibrium[,]" one of the Sellers.[31] Equilibrium owned 61% of Evolve's membership interests.[32] Testimony during arbitration established that in negotiating the sale "[t]he actual owners of the Seller," not Evolve's CEO, "were calling the shots in the background[.]"[33] Hagler was thought of as Evolve's "primary"[34] or "majority owner."[35]

During the deal's diligence period, Hagler was privy to conversations surrounding improper billing that had occurred.[36] Evolve's owners discussed the

---

[30] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 3 ("Original Arbitration Demand"), Ex. 4 ("Amended Arbitration Demand"), Dkt. No. 19.

[31] Original Arbitration Demand ¶ 11; Amended Arbitration Demand ¶ 12.

[32] Original Arbitration Demand ¶ 15; Amended Arbitration Demand ¶ 16; MIPA Annex I.

[33] Award ¶ 176.

[34] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 7–11 ("Evidentiary Hearing") 403 (testimony of post-closing Evolve CEO), 1117 (testimony of pre-closing Evolve CEO), Dkt. No. 19.

[35] Evidentiary Hearing 1130 (testimony of pre-closing Evolve CEO).

[36] Evidentiary Hearing 110–112 (testimony of an affiliate of purchaser) ("Q: Now, at some point around the same time as these cumulative financial implications of diligence findings were compiled in late September of 2019, did you participate in any discussion with any representatives of the sellers regarding this improper billing of the psychiatric and urinalysis services?
A. Yes, we did, most specifically with Aron Gittleson, the CEO.
Q. Did the seller representative, as he is known, Daryl Hagler, participate in any of those discussions?
A. These were telephonic. So to my recollection, he participated on one or two calls, but I am not specific as to a particular call that you are referring to.
Q. Was there any discussion in the 24 September time frame concerning whether old Evolve should be self-reporting these overcharges to the insurance companies?
A. Well, there were two -- there were two discussions that I recall. One was related to the improper billing that is referred to here in this exhibit, and that relates to psychiatric and urinalysis. Without

overbilling and instructed Evolve not to self-report the issues to insurers.[37]  Hagler

specifically opposed self-reporting on the grounds that it was up to the insurers to

figure out that there was a problem and to pursue Evolve for payment.[38]

going into too much detail, unless the arbitrators would like me to, without having -- this is also a violation of contracts and corporate practice of medicine laws in California.  So, without forming a separate what is called a PC or professional corporation, some of these bills would be improper.  And in addition to that, there was a similar issue with gross receipts tax that was never paid, so it was just never even filed.  That was something else that was brought to their attention.  In the course of these discussions we became concerned that the reputation of Evolve might be harmed with the insurance community, which ultimately were the payors and clients on behalf of 3 the patients of Evolve.  And so there was discussion about going back to the payors, for example the insurance companies, Anthem, and self-reporting, that Evolve should self-report these errors.  There was a subsequent finding which we haven't discussed yet which we became aware of much later, and a similar discussion was had about that as well.

Q. Did any representative of old Evolve or its owners take any position on whether old Evolve should self-report these issues that your due diligence had exposed?

A. Yes.  They had a very strong reaction to that suggestion and essentially we were, Galen was told that they would not agree to self-report any errors to insurance companies and that that was not their practice").

[37] Evidentiary Hearing 112.

[38] Evidentiary Hearing 424–426 (testimony of post-closing Evolve CEO) ("Q: Mr. Wood, we heard a little about the Anthem demand of $3.4 million.  How did you learn about that demand?

A. Aron Gittleson, president and CEO of Evolve, old Evolve, sent me a copy of it shortly after it was received.

Q. Do you recall participating in a call with members of the Galen team and members of the old Evolve team to discuss that demand?

A. Yes.

Q. Did you speak during that call?

A. Yes, I did.

Q. Do you recall what you said?

A. Yes.  We were discussing the fact that it appeared there was a pattern of billing for the drug tests and a pattern of billing for the psychiatric services that went beyond just Anthem and wanted to explore, should we have a settlement process with all other payors pre-closing so that we would not have some overhang set of liabilities post-closing yet to be determined.

Q. Did those comments elicit any responses from members of the Centers business team?

A. Yes.  There was a response from Daryl Hagler who indicated he objected to the idea of directly reaching out to payors.  He felt that it was inappropriate to voluntarily settle these, that it's up to the payors to figure out there was a problem and to pursue Evolve in that case.

Q. What, if anything, did you think of that statement by Mr. Hagler?

*D. Procedural History*

Plaintiffs commenced arbitration on March 18, 2021 by filing a demand with the American Arbitration Association (the "Original Arbitration Demand").[39] The Original Arbitration Demand brought four causes of action against Defendants; breach of contract (fictitious accounts receivable), breach of contract (additional losses), misrepresentation, and breach of contract (declaratory relief).[40] No distinction was made between Hagler and the other Defendants in the Original Arbitration Demand's counts.[41]

In Count I, the Plaintiffs alleged that Defendants made representations and warranties to the Plaintiffs that were untrue and caused Plaintiffs to overpay no less than $25 million.[42] In Count II, the Plaintiffs alleged that the Defendants made other representations and warranties, which Defendants also breached but that the damages needed to be determined in a hearing.[43] In Count III, Plaintiffs alleged on information and belief that "[Defendants] intentionally and/or negligently breached each and every of the aforementioned representations and warranties" and that these

---

A. Well, I was troubled by it. This was clearly billing that was outside of the limits of both contract and practice. It was beyond the legal authority of the provider. I felt strongly that the settlement should be pursued.").

[39] Original Arbitration Demand; Defendants' Answer ¶ 30.

[40] Original Arbitration Demand ¶¶ 38–67.

[41] Original Arbitration Demand 1, ¶¶ 38–67. There, Defendents were referred to as "Respondents."

[42] Original Arbitration Demand ¶¶ 38–44.

[43] Original Arbitration Demand ¶¶ 45–56.

misrepresentations caused an overpayment.[44] In Count IV, Plaintiffs sought a declaratory judgment seeking indemnification for non-liquidated damages.[45]

On May 14, 2021, Hagler filed an action in this Court bringing claims for declaratory judgment regarding the financial figures that were the subject of the representations and warranties claims in Plaintiffs' arbitration action, breach of contract, and breach of the covenant of good faith and fair dealing.[46] He contended that his claims were not arbitrable under the MIPA, and thus, that jurisdiction was proper in this Court.

On June 4, 2021, Plaintiffs submitted an amended arbitration demand (the "Amended Arbitration Demand") naming the same four Defendants[47] and re-asserting the causes of action.[48] The Amended Arbitration Demand added facts and increased Plaintiffs' liquidated damages.[49] On July 2, 2021, Defendants filed their Answering Statement, arguing that the liquidated damages claims were not subject to arbitration and were being litigated in this Court.[50]

---

[44] Original Arbitration Demand ¶¶ 57–62.

[45] Original Arbitration Demand ¶¶ 63–67.

[46] *Daryl Hagler v. Evolve Acquisition LLC, et al.*, 2021 WL 6123549, at *4 (Del. Ch. Dec. 28, 2021).

[47] Amended Arbitratoin Demand 1. There, again, Defendents were denominated "Respondents".

[48] Amended Arbitration Demand ¶¶ 44–73.

[49] *Compare* Original Arbitration Demand *with* Amended Arbitration Demand.

[50] Award ¶ 31; Transmittal Aff. Alexandra M. Cumings Supp. Opening Br. Supp. Pls.' Mot. Summ. J. on (A) the Single Count in Pls.' Verified Appl. Confirm and Enter J. Final Arbitration Award and (B) All Six Counts in Defs.' Verified Countercls. Ex. C ¶ 2, Dkt. No. 14.

Despite Hagler's action in Chancery, a pending motion to dismiss that action, and the belief that the liquidated damages claims were not arbitrable, Defendants agreed to proceed with discovery in the arbitration action.[51] On December 28, 2021, I issued an opinion in Hagler's action in this Court; holding that the arbitrability of Hagler's claims was a question for the arbitrators.[52] This ended the question of arbitrability, and Defendants—including Hagler—expressly consented to the arbitration panel's jurisdiction.[53]

Arbitration ensued. Pre-hearing briefs were submitted in January 2022.[54] Defendants, among other arguments in their Pre-Hearing Brief, laid out the elements of intentional misrepresentation[55] and argued that the Plaintiffs could not demonstrate liability.[56] In their own words, Plaintiffs "have made no allegations that could support a claim of intentional misrepresentation and the evidence does not support one."[57] Plaintiffs' disagreed in their Pre-Hearing Brief.[58] They argued that

---

[51] Award ¶ 31.

[52] *Hagler v. Evolve*, 2021 WL 6123549, at *2.

[53] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Brief Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 5 at 17 n.50 ("Defendents' Pre-Hearing Brief"), Dkt. No. 19; Award ¶ 33.

[54] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Brief Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 6 ("Plaintiffs' Pre-Hearing Brief"), Dkt. No. 19.

[55] "(i) deliberate, active concealment of a material fact, or silence in the face of a duty to speak; (ii) scienter; (iii) an intent to induce reliance via the misstatement or concealment; (iv) causation; and (v) damages." Defendents' Pre-Hearing Brief 22 (citing *Nicolet Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1986)).

[56] Defendents' Pre-Hearing Brief 22–23.

[57] Defendents' Pre-Hearing Brief 22–23.

[58] Plaintiffs' Pre-Hearing Memorandum.

14

Defendants "were at least reckless . . . in supplying false financial misinformation and making the representations in" the MIPA.[59]

The Panel held an evidentiary hearing across the course of five days in January 2022.[60] The Parties submitted post-hearing briefs to the Panel on April 15, 2022, and the Panel held post-hearing oral argument on June 15, 2022.[61]

At post hearing oral argument, the Panel asked Plaintiffs directly if they were alleging fraud and Plaintiffs replied in the affirmative.[62]

> Question: Are you making allegation of fraud in this case?
> Answer: Arbitrator Gluck, we believe that there is sufficient evidence for the panel to find that there was fraud, given the nature of this accounting chicanery. We're not focused on the fraud issue because we don't want to undertake a larger burden than we have to as claimants to prove our case. Breach of warranty, indemnification claim, does not require fraud. So, you know, like I said, we don't want to assume a higher burden. And fraud needs to be proven by a higher quantum of evidence than contract, breach of contract, so we're focused on the contract issues. But in light of the nature of some of these accounting tricks, I think there's ample evidence here that the panel could find fraud. . . . You asked me are we affirmatively alleging there was fraud? I'll just say this. It hasn't been the centerpiece of our case. As I started off with the first slide, we view this as a breach of contract case. But there's ample evidence, we think, that the panel can infer there was fraud, given the nature of the accounting issues here and the deterioration during 2019 from prior years with respect to how much they were booking as revenue and how much they actually collected.[63]

---

[59] Plaintiffs' Pre-Hearing Memorandum 22–24.
[60] Evidentiary Hearing; Award ¶ 37.
[61] Award ¶ 43; Transmittal Aff. Sara M. Metzler Supp. Equilibrium Health Solutions LLC, M&A Healthcare LLC, Ducat HC LLC, and Daryl Hagler Reply Br. Supp. Their Cross-Summ. J. Mot. Vacate Award Ex. 1 ("Post-Hearing Oral Argument"), Dkt. No. 27.
[62] Post-Hearing Oral Argument 51–53.
[63] Post-Hearing Oral Argument 51–53.

I have been unable to find any rebuttal by Hagler's counsel in the post-trial argument, pointing out the Hagler was in fact subject to a fraud/gross negligence standard of liability.

Briefing concerning shifting of costs followed post-hearing oral arguments.[64] In addition to reimbursement for fees expended in arbitration, Plaintiffs sought recovery of their expenses in Hagler's Chancery action.[65] Defendants argued that while collateral litigation to compel arbitration was contemplated by the MIPA, fees for such collateral litigation were not.[66]

Though the Parties originally requested a "reasoned award,"—that is, a full written decision specifying the grounds for any liability—they later requested the Panel issue a "reasoned award lite."[67] I assume the "lightly reasoned" award was an abbreviated version of the "reasoned" award. The Panel issued its reasoned award lite, the Award, on October 14, 2022.[68] The Panel, however, was not unanimous, and one arbitrator dissented.[69]

---

[64] Award ¶ 43.

[65] *See* Transmittal Aff. Alexandra M. Cumings Supp. Opening Br. Supp. Pls.' Mot. Summ. J. on (A) the Single Count in Pls.' Verified Appl. Confirm and Enter J. Final Arbitration Award and (B) All Six Counts in Defs.' Verified Countercls. Ex. H at 2 ("Defendants' Fee Application"), Dkt. No. 14; Award ¶ 301.

[66] Defendants' Fee Application 2.

[67] Award ¶ 45.

[68] Award; Defendants Answer ¶ 12.

[69] Award ¶ 45, n.1; Aff. Sara M. Metzler Supp. Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award Ex. 14, Dkt. No. 22.

Ultimately, in the judgment of the Panel, the financial information represented and warrantied was not accurate and resulted in losses; Defendants materially overstated revenue and EBITDA and their revenue recognition practices "were not accurate or reliable."[70] The Panel determined that,

> Because we find the Buyer's breach of contract claims meritorious in the ways described herein and grant the Buyer the relief to which it would, in any event, be entitled on its claims asserting the Seller's intentional or negligent misrepresentation as a tort, we need not reach such claims in this Final Award.
>
> We note in this regard that the Buyer told the Panel in the course of closing arguments that, while it is asserting the Seller's fraud, it is proceeding primarily on its breach of contract claims rather than take on the heavier burden of establishing fraud, if that is not necessary. We also note that the Parties requested a reasoned award lite.
>
> In these circumstances, we understand the Parties are not seeking a ruling as to the Buyer's claims in the alternative rendered redundant by our above determinations in the case.[71]
>
> Accordingly, the 97-page Award granted full relief to Plaintiffs, ordering;
>
> 1. [Defendants] Equilibrium Health Solutions LLC, M&A Healthcare LLC, Ducat HC LLC, and Daryl Hagler . . . to pay [Plaintiffs] Evolve Growth Initiatives, LLC, Evolve Holdco, Inc., and Evolve Intermediate Holding LLC . . . damages in the amount $28,258,000, along with pre-award interest in the amount of $5,271,370.92, for a total amount of $33,529,370.92 that [Defendants], jointly and severally, are directed to pay . . . .
>
> 2. . . . that all Escrow Funds be immediately released to [Plaintiffs] . . .

---

[70] Award ¶ 130.
[71] Award ¶¶ 293–95.

17

3. [Defendants], jointly and severally, . . . to pay [Plaintiffs] damages in the additional amount [of] $241,582, along with additional pre-award interest in the amount of $44,405.29, for a total amount of $285,987.29 that [Defendants], jointly and severally, are directed to pay . . .

5. [Defendants], jointly and severally, . . . to pay [Plaintiffs] $2,597,022.18. in attorneys' fees and costs.

6. [Defendants], jointly and severally, [to] bear the fees of the AAA in this Arbitration totaling $31,750 and the compensation of the Arbitrators in this Arbitration totaling $576,365.[72]

The Award specified timeframes for these payments to take place, designated several set offs, and required Defendants to indemnify Plaintiffs for certain unliquidated damages.[73] Further, the Award noted,

7. This Final Award is in final settlement of all claims, affirmative defenses, and set-offs submitted in this Arbitration. All claims, affirmative defenses, affirmative defenses, and set-offs not expressly granted herein are hereby denied.[74]

The Panel followed "the convention of the Parties" in collectively referring to Defendants as the "Seller" and, in accordance with an agreement of the Parties, did not "differentiate among the various entities or persons constituting [Plaintiffs] and [Defendants] respectively."[75] Thus, in the Award, Hagler was a "Seller" despite not being defined as such within the MIPA.

---

[72] Award 95–96.
[73] Award 95–96.
[74] Award 96.
[75] Award ¶ 1.

18

Hagler, and Defendants generally, disagreed with the Panel's assignment of joint and several liability to Hagler under the Award. On October 28, 2022, Defendants filed a motion pursuant to AAA Rule 50 requesting "correction of a ministerial error[,]" namely Hagler's liability.[76] Briefing and negotiation followed. By letter, Plaintiffs stated that, if the Defendants agreed to other conditions:

> Because Hagler is ostensibly not a Seller under the Agreement, but rather the Seller Representative, [Plaintiffs] do not oppose [Defendants]' request to the extent, but only to the extent, that [Defendants] ask that the Final Award be modified so that there is no determination that Hagler is presently personally liable to contractually indemnify [Plaintiffs] under the Agreement for damages and interest thereon arising from the Sellers' breaches of representations and warranties.[77]

Again, this concession was conditional,[78] and the Parties found no accord.[79] On November 30, 2022, the Panel concluded that the proposed changes "go beyond those permitted under Rule 50."[80]

---

[76] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Brief Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 15 ("Rule 50 Motion"), Dkt. No. 19; Defendants Answer ¶ 48.

[77] Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Brief Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 16 at 2 ("Rule 50 Response"), Dkt. No. 19.

[78] See Rule 50 Response.

[79] See Transmittal Aff. Sara M. Metzler Supp. Defs.' Combined Answering Brief Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. Vacate Award Ex. 17 ("Rule 50 Denial"), Dkt. No. 19.

[80] Rule 50 Denial 2; Defendants' Answer ¶ 48.

In what remains of this action, Plaintiffs seek confirmation of the Award and Defendants dispute Hagler's liability.[81] Plaintiffs filed their one count complaint for confirmation on December 2, 2022, and Defendants filed their answer and six count counterclaim on January 10, 2023.[82] Five of Defendants' counts sought vacation of the Award, while the sixth—Count IV—sought modification.[83]

As is regularly the case when parties dispute the confirmation of an arbitration award, the Parties here have filed cross motions for summary judgment.[84] Briefing on the cross motions began on February 6, 2023, and concluded on May 2, 2023.[85]

At oral argument on May 16, 2023, the Defendants acknowledged abandonment of Count IV and I dismissed Count V and VI.[86] I then confirmed the amount of the award.[87] I reserved judgment on the question of Hagler's joint and several liability, but I ordered the Parties to meet, confer, and post a letter to the docket on the question of settlement before I would consider the matter fully

---

[81] Tr. 5.16.2023 Cross-Mots. Summ. J.

[82] *See* Verified Appl. Confirm and Enter J. Final Arbitration Award; Defendants' Answer.

[83] Defendants' Answer ¶¶ 51–93.

[84] *See Polychain Cap. LP v. Pantera Venture Fund II LP*, 2022 WL 2467778, at *3 (Del. Ch. July 6, 2022).

[85] *See* Opening Br. Supp. Pls.' Mot. Summ. J. on (A) the Single Count in Pls.' Verified Appl. Confirm and Enter J. on Final Arbitration Award and (B) All Six Counts in Defs.' Verified Countercls., Dkt. No. 13; Equilibrium Health Solutions LLC, M&A Healthcare LLC, Ducat HC LLC, and Daryl Hagler Reply Br. Supp. Their Cross-Summ. J. Mot. Vacate Award, Dkt. No. 27.

[86] Tr. Cross-Mots. Summ. J. 43:10–43:23, 69:22–24. Count IV sought modification of the Award under FAA § 11 to correct the "evident mistake" of Hagler's liability. Counts V and VI sought vacation of the Award for manifest disregard of the law and lack of record support. Both Counts V and VI arose out of a whether certain information was represented and warranted and cited to the dissenting panelist's opinion. Defendants' Answer ¶¶ 69–93.

[87] Tr. Cross-Mots. Summ. J. 71:7–9.

submitted.[88]  The Parties complied, but were unable to settle the matter, and I formally took the matter under consideration on June 16, 2023.[89]

## II. ANALYSIS

"A summary judgment motion 'provides an appropriate judicial mechanism for reviewing an arbitration award, because the complete record is before the court and no *de novo* hearing is permitted.'"[90]  "Under Court of Chancery Rule 56, summary judgment may be granted if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"[91]  Cross motions for summary judgment do not change the Rule 56 standard; the Court must simply examine each motion on its own and determine if summary judgment is warranted.[92]

"Arbitral awards are nearly impervious to judicial oversight."[93]  Judicial review of an arbitration award is among the narrowest standards of review in the law.[94]  "Section 10 of the FAA . . . allows vacatur of an arbitration award only in the

---

[88] Tr. Cross-Mots. Summ. J. 71:7–24.
[89] *See* Judicial Action Form, Dkt. No. 42.
[90] *MHP Mgmt., LLC v. DTR MHP Mgmt.*, LLC, 2022 WL 2208900, at *2 (Del. Ch. June 21, 2022) (quoting *Wier v. Manerchia*, 1997 20 WL 74651, at *7 (Del. Ch. Jan. 28, 1997)).
[91] *Roma Landmark Theaters, LLC v. Cohen Exhibition Co.*, 2021 WL 2182828, at *6 (Del. Ch. May 28, 2021) (quoting Ct. Ch. R. 56(c)).
[92] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007).
[93] *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir. 2000).
[94] *SPX*, 94 A.3d at 750.

case of arbitral misconduct: 'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,' and 'exceed[ing] . . . powers.'"[95] Thus, the limited grounds to vacate an award exist:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[96]

"The statute contains no express ground upon which an award can be overturned because it rests on garden-variety factual or legal bevues."[97] As such, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."[98] "'[Q]uestionable legal support or a misreading of the law alone are insufficient to vacate an arbitration

---

[95] *Auto Equity Loans of Delaware, LLC v. Baird*, 232 A.3d 1293, *3 (Del. 2020) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).

[96] *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 731 (Del. Ch. 2008) (quoting 9 U.S.C. § 10(a)).

[97] *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990). "Garden-variety bevue," I admit I only learned from reading the *Advest* opinion, appears to be a Francophilic way of saying "ordinary oversight" or "common mistake."

[98] *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

award.'"[99]  "Indeed, to overturn an award, the court must be satisfied that 'there [is] absolutely no support at all in the record justifying the arbitrator's determinations.'"[100]

An arbitrator exceeds her authority when she decides an issue "outside of those contained in the submission or if [her] actions are in direct contradiction to the express terms of the agreement of the parties."[101]  Arbitral authority flows from two sources: "1) the underlying agreement between the parties in which they agree to submit their disputes to arbitration and 2) the document containing the submission to the Arbitrator of the issues to be decided."[102]  If the arbitrator decides an issue beyond these two wellsprings of authority, she has exceeded her authority.[103]  However, "[e]ven if the arbitrator did not state the grounds for a grant or denial of relief, the grant or denial of relief will be deemed to be within the scope of the arbitrator's authority '[i]f grounds for the award can be inferred from the facts of the case.'"[104]

---

[99] *Agspring, LLC v. NGP X US Holdings, L.P.*, 2022 WL 170068, at *3 (Del. Ch. Jan. 19, 2022), *aff'd*, 288 A.3d 690 (Del. 2022) (quoting *Auto Equity Loans of Delaware*, 232 A.3d at *3).

[100] *Carl Zeiss Vision*, 2017 WL 3635568, at *4 (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

[101] *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at *2 (Del. Ch. Aug. 18, 2009) (citing *Malekzadeh v. Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992)).

[102] *Malekzadeh v. Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992) (citing *Fagnani v. Integrity Fin. Corp.*, 167 A.2d 67, 70 (Del. Super. Ct. 1960)).

[103] *Id.* (citing federal case law).

[104] *World-Win Mktg.*, 2009 WL 2534874, at *2.

Here, the Defendants have assailed the award on a theory of manifest disregard for the law. This ground for vacatur is an "outgrowth of the statutory vacatur grounds for cases in which the arbitrator exceeds his powers."[105]

> [T]he test for 'manifest disregard for the law' is not whether the arbitrator misconstrued the contract-even if the contract language is clear and unambiguous. To vacate an arbitration award based on 'manifest disregard of the law,' a court must find that the arbitrator consciously chose to ignore a legal principle, or contract term, that is so clear that it is not subject to reasonable debate.[106]

"[T]he evidence must establish 'that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it.'"[107] This is a "steep hill to climb."[108]

Knowledge of the relevant legal principle requires "'an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator.'"[109] "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision."[110]

---

[105] *Travelers Ins. Co. v. Nationwide Mut. Ins. Co.*, 886 A.2d 46, 48 (Del. Ch. 2005).
[106] *SPX*, 94 A.3d at 747.
[107] *Id.* at 750 (quoting *Paul Green School of Rock Music Franchising, LLC. v. Smith*, 389 Fed. Appx. 172, 177 (3d Cir. 2010)).
[108] *Auto Equity Loans of Delaware*, 232 A.3d at 1293.
[109] *SPX*, 94 A.3d at 751.
[110] *Id.*

The Defendants argue that in holding Hagler personally liable, the Panel exceeded its scope by manifestly disregarding the law, providing no factual basis for its decision, and by lacking jurisdiction over Hagler. Defendants' primary argument is simply that the Panel misread the MIPA and lumped Hagler in with those defined as "Sellers" disregarding his status as "Seller Representative" who "'will have no liability to the buyer' except in cases of fraud, intentional misconduct or gross negligence."[111] This mistake, Defendants argue, is a clear disregard for the contract's limited liability provisions, which the Panel read,[112] and is akin to finding for the liability of a non-party.[113]

Defendants rely most directly on *Travelers Insurance v. Nationwide Mutual Insurance*.[114] *Travelers* stands for the principle that an award must be vacated where it holds liable a party for whom there is no conceivable liability.[115] In *Travelers*, this Court vacated an arbitration award for "manifest disregard of the law."[116] A driver insured by Nationwide caused an accident injuring a driver insured by Travelers.[117] Travelers paid its insured no-fault benefits, and sought to subrogate this payment

---

[111] Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 23–25, Dkt. No. 19 (quoting MIPA § 11.2(e)).

[112] Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 24–25.

[113] Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 27.

[114] 886 A.2d 46 (Del. Ch. 2005).

[115] *Id.* at *50–51.

[116] *Id.*

[117] *Id.* at *47.

from Nationwide.[118]  These claims were submitted to arbitration as required by an agreement entered by Nationwide and Travelers.[119]  Traveler's insured then settled her claims against Nationwide's insured for the at-fault driver's policy limits, which, by statute, superseded the subrogation claim, and *Travelers as well as the arbitrators were made aware of the settlement*.[120]  Nonetheless, Travelers continued with the arbitration proceeding, and the arbitrators made a subrogation award to Travelers.[121]  This Court noted that in light of the fact that the panel was aware of the payment which voided the subrogation claim, the award was in manifest disregard of the law. The Court vacated the decision, noting that "the final judgment was made in manifest disregard of the law on a record that reflected the operative facts."[122]

Here, by contrast, Hagler was a defendant to all counts of the Original and Amended Arbitration Demands.[123]  He failed to raise as a defense lack of contractual liability for simple rep and warranty breaches at any point during the arbitration proceedings, despite the incentive and opportunity to do so.[124]  He knew, or should have known, that the matters before the Panel included fraud and misrepresentation

---

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] *Id.* at *48.

[122] *Id.* at *50–51.

[123] Original Arbitration Demand 1, ¶¶ 38–67; Amended Arbitration Demand 1, ¶¶ 44–73.

[124] Opening Br. Supp. Pls.' Mot. Summ. J. on (A) the Single Count in Pls.' Verified Appl. Confirm and Enter J. on Final Arbitration Award and (B) all Six Counts in Defs.' Verified Countercls. 2; Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 28.

which could support his liability. The Panel appeared to limit its decision to simple contractual liability, for which Hagler was not liable; nonetheless, the Award imposed joint and several liability against Hagler.

The Supreme Court's decision in *SPX v. Guarda USA* is instructive.[125] In *SPX*, the Delaware Supreme Court overturned a Court of Chancery decision finding manifest disregard for the law because, despite finding the contract unambiguous *and* unapplied by the arbitrators, this Court did not consider whether the arbitrator's decision "rationally can be derived from either the agreement of the parties or the parties' submissions to the arbitrator."[126] Because there was a basis for the award in the contractual language as argued by the parties, the award could not be vacated.[127]

Thus, so long as there is a basis for liability discernable from the arbitration record, the arbitration must be confirmed. That is the case here.

Under the terms of the MIPA, Hagler, as Seller Representative, was liable to Evolve Acquisition LLC and Evolve, including their successors or assigns, for "fraud, intentional misconduct, or gross negligence" but not for actions otherwise "taken in good faith."[128] In the Award, the Panel noted:

> "When one steps back and looks at the consistent, ongoing, and continuing overstatement of Old Evolve's revenues, as discovered by the Buyer both during the Due Diligence period and after the Closing,

---

[125] 94 A.3d 745 (Del. 2014).
[126] *Id.* at 751 (quotation omitted).
[127] *Id.*
[128] MIPA 11.2(e).

27

the situation compellingly presents a picture of such financial overstatements as to strongly support the inference that they were intentional on the part of the Seller. At a minimum, the evidence shows that the approaches, particularly the percentages, the Seller used for Old Evolve's revenue recognition and for bad debt, were not accurate or true—that the Seller knew its revenue recognition approaches and systems, the bases for its revenue recognition, were not accurate or reliable."[129]

A "compelling picture" of intentionality supports a finding of "fraud, intentional misconduct or gross negligence."

Similarly, Hagler contests the scope of the arbitration, arguing that his liability was not among the issues for which the contract compelled arbitration. But based on the procedural history of this matter, and the complaint in arbitration, this argument must fail.

Hagler points to the MIPA, and argues that he was not thereby bound to arbitrate and his liability accordingly was not within of the Panel's ambit.[130] However, where there is an adequate basis for the arbitration decision, the arbitrators have not exceeded their scope. In *Malekzadeh v. Wyshock*, a managing general partner of a partnership sought to vacate an arbitration award removing him as general partner and adjusting the ownership percentages of the partners.[131] The

---

[129] Award ¶ 130.

[130] Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 27 (citing *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707 (Tex. App. 2009)).

[131] 611 A.2d 18, 20 (Del. Ch. 1992).

limited partner petitioners originally brought a claim in this Court with a request for a preliminary injunction, but injunctive relief was denied and the action stayed in favor of arbitration.[132] Though the arbitration clause in the partnership agreement was broad, the request for arbitration—via a pre-trial stipulation—included only a narrow list of issues, specifically whether the general partner "had violated either Delaware partnership law or the Partnership Agreement, and whether he had breached the fiduciary duty he owed to the limited partners."[133] The arbitration panel found that the general partner had not mismanaged the partnership in several ways, but nonetheless imposed an independent manager upon the partnership and reduced the general partner's ownership percentage without providing a basis for the decision.[134] This Court upheld the award, nonetheless, because the pre-trial stipulation noted that the previously filed complaint in this Court would serve as the agreed "foundation of the Limited Partners' claims."[135] The *Malekzadeh* court found that "[b]ecause there were claims made by the limited partners that were not expressly addressed in the Award, it can be inferred that those claims served as the basis for the granting of the limited partners' request."[136]

---

[132] *Id.* at 19–20.

[133] *Id.* at 20.

[134] *Id.* at 20–21.

[135] *Id.* at 21.

[136] *Id.* at 22. In dicta, this Court said that if the denied claims were the only claims leveled against the general partner, the panel would have exceeded its scope.

Here, Hagler was a named party defendant, and his liability was alleged in each of the Arbitration Demands' counts. This provided Hagler with notice of his potential liability and a basis for the Panel to make its decision. Because Hagler was a named defendant and included in each of the Arbitration Demands' counts, Hagler's liability was within the Panel's scope.

Further, and perhaps more fundamentally, Hagler could have raised the issue of arbitrability of claims against him with the Panel. He failed to do so.[137] As I found in Hagler's original action on this very point, that issue would have been properly before the Panel.[138] Ultimately, the failure to argue to the Panel that Hagler was outside the scope of arbitration binds Hagler. As this Court has noted,[139] a party's "failure to make arguments to the arbitrator is not grounds for vacating the arbitrator's decision[;] . . . [the party's] failure to brief and argue the issue before the arbitrator may have been a conscious decision," or mere oversight.[140] Ultimately, "[w]hether plaintiff's failure to make certain arguments to the arbitrator was intentional or not, such failure does not provide this Court a reason to vacate the award of the arbitrator."[141]

---

[137] Opening Br. Supp. Pls.' Mot. Summ. J. on (A) the Single Count in Pls.' Verified Appl. Confirm and Enter J. on Final Arbitration Award and (B) All Six Counts in Defs.' Verified Countercls. 2; Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 28.

[138] *Hagler v. Evolve*, 2021 WL 6123549, at *5.

[139] *World-Win Mktg. v. Ganley Mgmt.*, 2009 WL 2534874, at *3.

[140] *Id.*

[141] *Id.*

The Defendants make a final argument. They argue that Plaintiffs should be estopped from confirming the Award because the Plaintiffs acknowledged the Award's deficiency in regard to Hagler's liability.[142] The Defendants first raised the issue of Hagler's joint and several liability via a request to the Panel under AAA Rule 50, shortly after the Award issued. In their response to the Defendants' request to correct the "clerical mistake" or "ministerial error" regarding Hagler's personal liability, Plaintiffs agreed that

> [b]ecause Hagler is ostensibly not a Seller under the Agreement, but rather the Seller Representative, *[Plaintiffs] do not oppose* [Defendants'] request to the extent, but only to the extent, that [Defendants] ask that the Final Award be modified so that there is no determination that Hagler is presently personally liable to contractually indemnify [Plaintiffs] under the Agreement for damages and interest thereon arising from the Sellers' breaches of representations and warranties.[143]

I find, however, that this "concession" was conditional and contingent on several further modifications to the award. Plaintiffs sought to "expressly reserve all of their rights to assert any claims of any nature for damages or any other form of relief against Hagler as an individual or in any other capacity in any form of action or proceeding."[144] Further, the Plaintiffs wrote,

> "[f]or the avoidance of doubt, to the extent the Panel is disposed to modify the Final Award so there is no determination that Hagler is

---

[142] Defs.' Combined Answering Br. Opp'n Pls.' Mot. Summ. J. and Opening Br. Supp. Defs.' Cross-Mot. Summ. J. to Vacate Award 31–33.
[143] Rule 50 Response 2 (emphasis added).
[144] Rule 50 Response 4.

presently personally liable to contractually indemnify [Plaintiffs] under the Agreement for damages and interest arising from Seller [Defendants'] breaches of representations and warranties, Plaintiffs request that the Panel add a paragraph . . . that confirms that the modification is without prejudice to [Plaintiffs'] rights to assert claims against Hagler."[145]

The Panel denied the Defendants' request as incompatible with relief available under Rule 50, and did not modify the Award.[146]

It is not entirely clear under what theory Hagler proceeds here. There was never an unconditional promise by Plaintiffs to waive liability. Estoppel requires a change in position on the part of the non-declarant that is absent here.[147] The Panel declined to consider the issue and did not rely on the Plaintiffs' statement; thus, no judicial estoppel arises.[148]

As there are no adequate bases on which to vacate the Award, to I must confirm it.

---

[145] Rule 50 Response 4.

[146] Rule 50 Denial 2.

[147] *Bantum v. New Castle Cnty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 51 (Del. 2011) ("To establish estoppel, the party claiming estoppel must show the following three elements: (1) she lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, (2) she relied on the conduct of the party against whom estoppel is claimed, and (3) she suffered a prejudicial change of position as a result of her reliance.") (citation and quotation omitted).

[148] "'[J]udicial estoppel operates only where the litigant's [present position] contradicts another position that the litigant previously took *and* that the Court was successfully induced to adopt in a judicial ruling.'" *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859–60 (Del. 2008) (emphasis in original) (quoting *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. July 13, 1998)).

## III. CONCLUSION

For the foregoing reasons, the Award is confirmed in full. The Plaintiffs' Motion for Summary Judgment is granted, and the Defendants' denied. The Parties should provide a form of order.